UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUSTIN SHAW,

                       Plaintiff,

     -v-

C.O. ORTIZ,

                      Defendant.

Case No. 15-CV-8964 (KMK)

OPINION & ORDER

Appearances:

Justin Shaw
Elmira, NY
*Pro Se Plaintiff*

David J. Galalis, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

      Pro se Plaintiff Justin Shaw ("Plaintiff") brings this Action pursuant to 42 U.S.C. § 1983

against Correction Officer Benjamin Ortiz ("Defendant"), alleging that Defendant physically

assaulted him while he was incarcerated at the Fishkill Correctional Facility.  Before the Court is

Defendant's Motion To Dismiss the Complaint (the "Motion") pursuant to Federal Rule of Civil

Procedure 12(b)(6).  (Dkt. No. 13.)  For the following reasons, Defendant's Motion is denied.

I.  Background

A.  Factual Background

      The following facts are drawn from Plaintiff's Complaint and are taken as true for the

purposes of resolving the instant Motion.

On June 27, 2015, Defendant was escorting Plaintiff to the first floor holding pen of the Fishkill Correctional Facility because Plaintiff had an incident with his cellmate.  (Compl. ¶ II.D (Dkt. No. 2).)  As Plaintiff exited his cell, Defendant ordered Plaintiff to put his hands on the wall so Defendant could pat frisk him.  (*Id.*)  During the pat frisk, Defendant pinched Plaintiff's rib cage and tackled Plaintiff to the floor.  (*Id.*)  Defendant ordered Plaintiff to stop resisting even though Plaintiff was not resisting.  (*Id.*)  Plaintiff received a misbehavior report as if he were the aggressor in this incident, but was found not guilty.  (*Id.*)

Plaintiff alleges that he filed a grievance regarding Defendant's conduct, but he did not receive a response.  (*Id.* ¶¶ IV.D–F.)  Plaintiff spoke to the mental health staff about the alleged abuse and reported everything to "I. Cy."  (*Id.* ¶¶ IV.F.3, G.1.)   He went so far as to write letters to the grievance sergeant and the superintendent of the prison but still received no response.  (*Id.* ¶¶ IV.D–G, I.)  Plaintiff alleges that correction officers were misplacing his mail so that he could not file a grievance.  (*Id.* ¶ IV.I.)

B.  Procedural History

Plaintiff commenced this Action against Defendant on November 13, 2015.  (Dkt. No. 2.) Defendant filed the instant Motion, and accompanying papers, on May 2, 2016.  (*See* Dkt. Nos. 13–14.)  Plaintiff has not filed an opposition.

II.  Discussion

A.  Standard of Review

The Supreme Court has held that, although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (alteration in original).  Instead, the Supreme Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563.  A plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  But if a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed."  *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]."  *Sykes v. Bank of*

*Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

### B. Analysis

Defendant argues that Plaintiff has failed to exhaust his administrative remedies and therefore the Complaint must be dismissed.  (Def.'s Mem. of Law in Supp. of Mot. To Dismiss ("Def.'s Mem.") 2–5 (Dkt. No. 14).)

#### 1.  Inmate Grievance Procedures

As a general matter, the New York State Department of Corrections and Community Supervision ("DOCCS") Inmate Grievance Program ("IGP") outlines the procedures that apply to grievances filed by inmates in New York State correctional facilities.  The IGP provides for a three-step grievance process.  (*See* Def.'s Mem. 3–4 (citing 7 N.Y.C.R.R. § 701 *et seq.*).)  *See also Abdallah v. Ragner*, No. 12-CV-8840, 2013 WL 7118083, at *2 (S.D.N.Y. Nov. 22, 2013) (noting that "[DOCCS] provides an administrative remedy for many prisoners' claims," which is "a grievance system available to prisoners in custody at state prisons, such as Fishkill." (citing 7 N.Y.C.R.R. § 701.1(c))).  Under the framework used in typical cases, an inmate must first file a complaint at the facility where the inmate is housed within 21 calendar days of an alleged occurrence.  7 N.Y.C.R.R. § 701.5(a)(1).  Despite this time limit, a grievant may request an exception, *see id.*, based on "mitigating circumstances," *id.* § 701.6(g)(1)(i)(*a*), but no exception

will be granted if the request was made more than 45 days after the alleged occurrence, *id.* Upon receipt, the grievance clerk consecutively numbers and logs each grievance. *Id.* § 701.5(a)(2). Additionally, once filed, the representatives of the Inmate Grievance Resolution Committee ("IGRC") have up to 16 calendar days to resolve it informally. *Id.* § 701.5(b)(1). If the matter is not satisfactorily resolved, the IGRC conducts a hearing to either answer the grievance or make a recommendation to the superintendent, *id.* § 701.5(b)(2)(i), which is scheduled within 16 days after receipt of the grievance, *id.* § 701.5(b)(2)(ii). The IGRC's decision "must be communicated to the grievant . . . in writing . . . within two working days" of the hearing. *Id.* § 701.5(b)(3)(i).

The second step in the tripartite framework is for the grievant or any direct party to appeal the IGRC's decision to the prison superintendent within seven calendar days after receipt of the written response, although the appealing party can seek an exception to the time limit, *id.* § 701.5(c)(1), again based on mitigating circumstances, *id.* § 701.6(g)(1)(i)(*b*), provided that the request was not made more than 45 days after the date of the decision, unless the late appeal asserts a failure to implement the IGRC's decision, *see id.* Generally, the superintendent has 20 days from the date the appeal was received to render a decision. *Id.* §§ 701.5(c)(3)(i)–(ii).

The third and final step is to appeal the superintendent's decision to the Central Office Review Committee ("CORC"), which the prisoner must do within seven days of the superintendent's written response to the grievance. *Id.* § 701.5(d)(1)(i). Here, too, an inmate may request an exception to the time limit, *id.*, if based on mitigating circumstances and if made within 45 days of the date of the decision, unless, again, the late appeal asserts a failure to implement the decision, *id.* § 701.6(g)(1)(i)(*b*).

The IGP provides for an expedited grievance procedure for allegations of harassment. *Id.* § 701.8. In those cases, "grievances are forwarded directly to the superintendent for review, skipping the first step of review by the IGRC." (Def.'s Mem. 3.) "If the superintendent fails to respond within the required 25 calendar day time limit the grievant may appeal his/her grievance to [the] CORC." 7 N.Y.C.R.R. § 701.8(g).

### 2. Prison Litigation Reform Act Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement applies to all personal incidents while in prison, *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes"); *see also Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (same), and includes actions for monetary damages despite the fact that monetary damages are not available as an administrative remedy, *Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding exhaustion is required "regardless of the relief offered through administrative procedures"). Moreover, the PLRA mandates "'proper exhaustion'—that is, 'using all steps that the agency holds out, and doing so properly,' . . . [which] entails . . . 'completing the administrative review process in accordance with the applicable procedural rules.'" *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (alteration omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88, 90 (2006)); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

Prisoners in the custody of DOCCS must exhaust all levels of the IGP process even if they do not receive a response from the IGRC or superintendent.  *See Dabney v. Pegano*, 604 F. App'x 1, 4 (2d Cir. 2015) ("The IGP provides a clear timeline for appealing grievances to the CORC, which applies even when the prisoner does not receive a timely decision from the IGRC or a superintendent.  [The] [p]laintiff therefore had an unimpeded path to the CORC, notwithstanding his claims that the Great Meadow grievance clerk failed to process his complaint and that the Clinton superintendent ignored his appeal." (citation omitted)); *see also Mena v. City of New York*, No. 13-CV-2430, 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016) ("[T]he law is well-settled that an inmate's failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust administrative remedies." (internal quotation marks omitted)); *Wallace v. Fisher*, No. 13-CV-1208, 2015 WL 9275001, at *2 (N.D.N.Y. Dec. 18, 2015) ("After carefully reviewing the case law, the [c]ourt finds that the weight of authority (and the better-reasoned authority) answers th[e] question [of whether the IGRC's nonresponse to a grievance must be appealed to the superintendent where the plaintiff's grievance was never assigned a grievance number] in the affirmative.").[1]  Thus, if a plaintiff does not receive a response from the IGRC, he normally must file an appeal with the prison superintendent and then with the CORC to fully exhaust his grievance.  Indeed, the IGP explicitly states that "matters not decided within the time limits may

---

[1] Some courts have held that prisoners may have exhausted their administrative remedies even where they do not utilize the appeal process when the prison fails to record or assign them grievance numbers because "there is nothing on the record for the next administrative level to review."  *Johnson v. Tedford*, 616 F. Supp. 2d 321, 326 (N.D.N.Y. 2007).  The Court need not address the validity of these cases at this point in the litigation.  Plaintiff has not alleged that his grievance was lost or misplaced.

be appealed to the next step."  7 N.Y.C.R.R. § 701.6(g)(2); *see also id.* § 701.8(g) (same for

expedited harassment grievances).

The PLRA does, however, "contain[] its own, textual exception to mandatory

exhaustion."  *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016).  The Supreme Court recently

explained:

> Under § 1997e(a), the exhaustion requirement hinges on the "availab[ility]" of
> administrative remedies: An inmate, that is, must exhaust available remedies, but
> need not exhaust unavailable ones.  And that limitation on an inmate's duty to
> exhaust . . . has real content. . . .  [A]n inmate is required to exhaust those, but only
> those, grievance procedures that are "capable of use" to obtain "some relief for the
> action complained of."

*Id.* at 1858–59 (quoting *Booth*, 532 U.S. at 738).

There are "three kinds of circumstances in which an administrative remedy, although

officially on the books, is not capable of use to obtain relief."  *Id.* at 1859.  First, an

"administrative procedure is unavailable when . . . it operates as a simple dead end—with

officers unable or consistently unwilling to provide any relief to aggrieved inmates."  *Id.*

Second, "an administrative scheme might be so opaque that it becomes, practically speaking,

incapable of use.  In this situation, some mechanism exists to provide relief, but no ordinary

prisoner can discern or navigate it."  *Id.*  Third, an administrative remedy may be unavailable

"when prison administrators thwart inmates from taking advantage of a grievance process

through machination, misrepresentation, or intimidation."  *Id.* at 1860.  These three

circumstances "do not appear to be exhaustive," *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d

Cir. 2016), but they do "guide the Court's inquiry," *Khudan v. Lee*, No. 12-CV-8147, 2016 WL

4735364, at *5 (S.D.N.Y. Sept. 8, 2016).

A plaintiff need not plead that one of these three circumstances exists or that he did in

fact exhaust his administrative remedies because the "[f]ailure to exhaust administrative

remedies is an affirmative defense under the PLRA, not a pleading requirement." *Williams*, 829 F.3d at 122. Defendant bears the burden of proving that Plaintiff failed to exhaust available administrative remedies. *McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003) ("[The] defendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity."); *see also Williams*, 829 F.3d at 122 ("[I]nmates are not required to specifically plead or demonstrate exhaustion in their complaints." (internal quotation marks omitted)). Thus, a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted only if "nonexhaustion is clear from the face of the complaint," *Lovick v. Schriro*, No. 12-CV-7419, 2014 WL 3778184, at *4 (S.D.N.Y. July 25, 2014) (alterations and internal quotation marks omitted); *see also Lee v. O'Harer*, No. 13-CV-1022, 2014 WL 7343997, at *3 (N.D.N.Y. Dec. 23, 2014) ("Dismissal under Rule 12(b)(6) for failure to exhaust is appropriate if such failure is evidenced on the face of the complaint and incorporated documents."); *Sloane v. Mazzuca*, No. 04-CV-8266, 2006 WL 3096031, at *4 (S.D.N.Y. Oct. 31, 2006) ("[B]y characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss." (internal quotation marks omitted)).

When non-exhaustion is not clear from the face of the complaint, a defendant's motion can be converted to a motion for summary judgment "limited to the narrow issue of exhaustion and the relatively straightforward question[] [of] . . . whether remedies were available." *Stevens v. City of New York*, No. 12-CV-1918, 2012 WL 4948051, at *3 (S.D.N.Y. Oct. 11, 2012) (internal quotation marks omitted); *see also Rambert v. Mulkins*, No. 11-CV-7421, 2014 WL 2440747, at *6 (S.D.N.Y. May 30, 2014) (same); *Smalls v. Jummonte*, No. 08-CV-4367, 2010 WL 3291587, at *3 (S.D.N.Y. Aug. 13, 2010) (same). When doing so in the context of an action

brought by a pro se inmate, the potential consequences of a motion for summary judgment as well as the procedural requirements for responding to one must first be explained, and the Court must also allow Plaintiff the opportunity to take discovery.  *See Hernández v. Coffey*, 582 F.3d 303, 307–08 (2d Cir. 2009) (noting that "[i]n the case of a pro se party . . . , notice is particularly important because the pro se litigant may be unaware of the consequences of his failure to offer evidence bearing on triable issues" and that, "[a]ccordingly, pro se parties must have unequivocal notice of the meaning and consequences of conversion to summary judgment" (alteration, italics, and internal quotation marks omitted)).  As a result, in the PLRA exhaustion context, courts typically have insisted upon limited discovery before converting a motion to dismiss for failure to exhaust administrative remedies into a motion for summary judgment.  *See, e.g.*, *Lovick*, 2014 WL 3778184, at *5 (observing that "when converting a Motion to Dismiss into a Motion for Summary Judgment under Fed. R. Civ. P. 12(d), notice to the parties is mandated, particularly when a pro se litigant is involved," and accordingly "permit[ting] the parties to engage in limited discovery confined solely to the issue of administrative exhaustion" (italics omitted)); *Pratt v. City of New York*, 929 F. Supp. 2d 314, 319 (S.D.N.Y. 2013) (noting that the court could convert motion to dismiss into motion for summary judgment on issue of PLRA exhaustion but observing that, if it were to do so, "the parties would be entitled to an opportunity to take discovery and submit additional relevant evidence, and the parties have not yet been allowed such an opportunity"); *Stevens*, 2012 WL 4948051, at *7 (noting that it was appropriate before converting the motion to dismiss into a summary judgment motion to permit discovery limited to the issue of administrative exhaustion).

3.  Analysis

In his Complaint, Plaintiff alleges that he filed a grievance, but did not receive a response.  (*See* Compl. ¶¶ IV.E–G, I.)  He did not thereafter file an appeal with the prison superintendent or to the CORC as required by the IGP.  *See, e.g.*, *Dabney*, 604 F. App'x at 4 ("The IGP provides a clear timeline for appealing grievances to the CORC, which applies even when the prisoner does not receive a timely decision from the IGRC or a superintendent.").  Instead, Plaintiff spoke to the prison's mental health staff and "I. Cy.," (Compl. ¶¶ IV.F.3, G.1), and wrote letters to the grievance sergeant and the superintendent, (*id.* ¶ IV.I).  Even if the Court assumes that Plaintiff's letter to the superintendent was sufficient to file an appeal with the superintendent, Plaintiff does not allege that he filed an appeal with the CORC after the superintendent ignored the letter.  Thus, the letter written to the superintendent does not cure Plaintiff's failure to fully exhaust his administrative remedies.  *See Franco v. Monroe*, No. 09-CV-8787, 2012 WL 3552673, at *3 (S.D.N.Y. Aug. 13, 2012) (finding that even if the plaintiff filed an expedited grievance with the superintendent, he failed to exhaust administrative remedies because he did not appeal the grievance to the CORC); *see also JCG v. Ercole*, No. 11-CV-6844, 2014 WL 1630815, at *7 (S.D.N.Y. Apr. 24, 2014) ("[E]ven if [the] [p]laintiff's letter to the [s]uperintendent could be construed as a proper step in the grievance process, [the] [p]laintiff still failed to complete the final exhaustion requirement—appealing the matter to the CORC."), *adopted by* 2014 WL 2769120 (S.D.N.Y. June 18, 2014).  Because Plaintiff's grievance "has not been appealed to and decided by the highest body in the administrative process, [he] cannot be said to have exhausted his administrative remedies."  *Jones v. Allen*, No. 08-CV-4003, 2010 WL 3260081, at *2 (S.D.N.Y. Aug. 9, 2010).

Nonetheless, the Court cannot determine "from the face of the complaint," *Lovick*, 2014 WL 3778184, at *4 (internal quotation marks omitted), whether the prison's administrative remedies were in fact "available."  Plaintiff alleges that the correction officers "knew [he] was trying to grieve the issues [identified in the Complaint] so they must have been misplacing [his] mail."  (Compl. ¶ IV.I.)  Accepting this allegation as true, as the Court must, *Erickson*, 551 U.S. at 94, administrative remedies may have been unavailable to Plaintiff based on the third type of circumstance identified by the Supreme Court in *Ross*, i.e., "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," *Ross*, 136 S. Ct. at 1860.[2]  While true that Plaintiff has not pled that he did attempt to file an appeal, if correction officers were misplacing Plaintiff's mail, it is unclear whether any such appeal would have been properly filed—possibly rendering administrative remedies unavailable.  Therefore, Defendant's Motion is denied without prejudice to refiling a motion for summary judgment on Plaintiff's failure to exhaust administrative remedies after the Parties have conducted limited discovery.  The Parties must focus on whether Plaintiff filed a grievance with the IGRC, whether correction officers misplaced Plaintiff's mail, and whether administrative remedies were available to Plaintiff.  The Court will hold a conference to set a discovery schedule.

The Court does note that the factual scenario here is different from that in *Williams* where the Second Circuit found that part of the IGP's regulatory scheme was "so opaque and so confusing that . . . no reasonable prisoner c[ould] use" it.  829 F.3d at 124 (internal quotation marks omitted) (first alteration in original).  In *Williams*, the plaintiff was housed in a prison's

---

[2] The Court assumes for purposes of this Opinion that the administrative remedies at the Fishkill Correctional Facility do not "operate[] as a simple dead end."  *Ross*, 136 S. Ct. at 1859.

special housing unit.  According to the regulations pertaining to prisoners housed in a special housing unit, *see* 7 N.Y.C.R.R. § 701.7, the plaintiff could file a grievance by giving it to a correction officer who was then supposed to forward it to the grievance office.  *Id*. at 120–21.  The plaintiff alleged that he gave his grievance to a correction officer to file, but the correction officer never filed it.  *Id.* at 124.  The court found that the "regulations simply d[id] not contemplate the situation in which [the plaintiff] found himself"—that he was in the special housing unit and the correction officer never filed the grievance—"making it practically impossible for him to ascertain whether and how he could pursue his grievance."  *Id.*; *see also id.* at 126 ("In sum, the regulations plainly do not describe a mechanism for appealing a grievance that was never filed.").  Here, those circumstances are not present.  *See Mena*, 2016 WL 3948100, at *5 (finding that the Second Circuit's decision in *Williams* "hinged on the 'extraordinary circumstances' specific to the case before it").  Plaintiff alleges that he filed his grievance, but never received a response.  (Compl. ¶ IV.F.)  The IGP specifies that a prisoner may appeal a grievance "to the next step" if it is "not decided within the [applicable] time limits."  7 N.Y.C.R.R. § 701.6(g)(2); *id.* § 701.8(g) (same for expedited harassment grievance); *see also Rodriguez v. Reppert*, No. 14-CV-671, 2016 WL 6993383, at *3 (W.D.N.Y. Nov. 30, 2016) (The grievance "regulations expressly contemplate . . . that, absent an extension of time, 'matters not decided within the time limits may be appealed to the next step.'  7 N.Y.C.R.R. § 701.6(g)(2).  In other words, a failure to render a timely decision at a lower level in the grievance process gives a prisoner the option of appealing that inaction to the next level.  A prisoner who does not avail himself of that option will almost certainly find his lawsuit dismissed for failure to exhaust.").  Thus, the IGP contemplates the circumstances in which

Plaintiff found himself because the failure to render a timely decision at a lower level does not relieve a prisoner of the obligation to appeal to the next level.[3]

C.  Plaintiff's Letter to the Court

On August 1, 2016, the Court received a letter from Plaintiff stating that he did not understand what was happening in this case and asking why he had not been brought into court or been appointed a public defender.  (Dkt. No. 18.)  The Court does not normally bring detained parties into a courtroom in civil cases.  Nor is there a constitutional right to counsel in civil cases.  However, the Court will schedule a telephone conference in this case.  Also, if Plaintiff wants to make an application to have the Court appoint an attorney, he may do so.

---

[3] While it is unclear from the Complaint, it is possible that Plaintiff was housed in Fishkill's special housing unit at the time he was allegedly assaulted by Defendant.  (*See* Compl. ¶ IV.A (stating that Plaintiff was confined in "Fishkill Shu-200" at the time of the alleged assault).)  If discovery reveals that Plaintiff's grievance was never filed and he was housed in "Shu-200" when he attempted to file it, Defendant could be hard pressed to distinguish *Williams* in a motion for summary judgment.

## III. Conclusion

For the foregoing reasons, Defendant's Motion is denied. The Court will hold a

telephone conference on January 19, 2017, at 10 a.m. to set a discovery schedule.[4] After

discovery is completed, Defendant may file a premotion letter with the Court seeking leave to

file a motion for summary judgment. The Clerk of Court is respectfully directed to terminate the

pending Motion. (Dkt. No. 13.)

SO ORDERED.

DATED:    December 21, 2016
          White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[4] Defense counsel is expected to appear in person and to make all necessary arrangements
for Plaintiff to appear by phone.

15